* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Deceased employee Terrance Lowe was born October 4, 1976 and was 26 years old when he was shot to death on December 11, 2002. At the time of his death, Mr. Lowe was married to Latasha Lowe. According to her birth certificate, Camay Latasha Lowe was born June 29, 1999 to Terrance Lowe and Latasha Lowe. According to his birth certificate, Dontaye Ahmed Lowe was born November 21, 2001 to Terrance Lowe and Latasha Lowe. According to his birth certificate, Charles Terrell Marquise Moultrie was born March 27, 1996 to Latasha Ann Moultrie and no father is named. During her testimony in this matter, Ms. Lowe identified the decedent as the father of Camay Latasha Lowe and Dontaye Ahmed Lowe, but did not identify decedent as the father of Charles Terrell Marquise Moultrie. There is no evidence of record that Charles Terrell Marquise Moultrie was ever acknowledged by the deceased or that he was substantially dependant on the deceased.
2. Defendant R "n" S Enterprises, Inc. (hereinafter, RNS) is a business engaged in building and recycling wood pallets. Defendant is owned and operated by Richard N. Sinclair. Mr. Sinclair operated his business from a metal building on a piece of property off of Yadkin Road in Fayetteville where pallets were built and repaired. The lot was not owned by RNS or Richard Sinclair. The work was done using wood, nails, nail guns, saws, a miter saw, a forklift, and paint for the edge of the pallets. Pallets that were completed were then placed in stacks on the yard or on the flatbed truck that Mr. Sinclair owned.
3. Mr. Lowe was shot while at work with RNS on December 11, 2002. Loretta Bethune worked for RNS from July 1996 until July 2003. Tyrone Sherlock testified he had worked with RNS for approximately three to four years before the shooting. Mr. Sherlock testified that Harlowe Gooch, the shooter, had been working for RNS for one and a half to two years prior to the shooting and that the deceased had been working there about two or three months prior to the shooting. Leon Virgil had worked with RNS for approximately three years at the time of the shooting and testified that there were four or five people working the day Mr. Lowe was shot. Tyrone "Woody" McQueen, Sonny McLaughlin, and a gentleman by the name of Albert were also working the day of the shooting.
4. Mr. Sherlock testified, and the undersigned finds as fact, that Mr. Sinclair told everyone what time to come to work, provided all the materials and tools for performing the work, told them what to do, and when they got the pallets built and loaded on the truck they would call Mr. Sinclair, who would come get the truck and deliver the pallets. Mr. Sinclair would come by almost every day to check on things. On Fridays, Mr. Sinclair would arrive and pay the employees cash according to the hours on their time card. Mr. Sinclair never provided any of his employees a W-2 or 1099.
5. Mr. Sinclair would tell his employees about rules and regulations on the yard and told them that if he saw them point a nail gun or hammer at someone else, he was going to tell them to put it down once and if they did not, then he would make them leave the yard. When asked why Mr. Sinclair told the employees that, Mr. Sherlock said "it's no secret that everybody down there got a record, you know, had a problem with the law."
6. At the time of the December 11, 2002 shooting, RNS had three or more employees and an employer-employee relationship existed between RNS and plaintiff at all relevant times. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
7. The employees had time cards and punched in and out on machine there on the side of the building. Mr. Virgil testified that he made $280.00 to $300.00 per week and that Mr. Sinclair paid them in cash each Friday. Ms. Bethune testified she was paid $7.50 per hour for 40 hours per week. Ms. Lowe testified that her husband made $6.50 per hour and worked 8:00 to 5:00, five days per week. Defendant has offered no evidence on the issue of plaintiff's average weekly wage. Mr. Lowe's average weekly wage was $260.00 per week, yielding a compensation rate of $173.34.
8. Ms. Bethune testified to being "jumped" by a coworker's girlfriend because of a dispute over some money she said she was owed by the coworker. She said it happened the month before the shooting and when she reported it to Mr. Sinclair, he just laughed about it.
9. RNS had a barrel outside the building in which wood was burned and the employees used to keep warm. There was also a large table the employees used for their breaks. Mr. Virgil testified that some of them were near the barrel for their 3:00 p.m. break and he heard Mr. Lowe and Mr. Harlowe Gooch talking about a stick. Mr. Virgil said they were always joking and playing around and he heard Mr. Lowe ask if he was going to shoot him and then he heard a gunshot.
10. Tyrone Sherlock, a laborer and supervisor, testified that Mr. Lowe walked by Mr. Gooch and hit him on the head a couple times with a piece of paper or cardboard that was rolled up. After the second time, Mr. Gooch said something and everyone started laughing. Mr. Gooch and Mr. Lowe were playing around with a stick near the fire barrel and then started tussling and wrestling. According to Mr. Sherlock, Mr. Gooch stepped back and spit some blood out and pulled out a gun and shot Mr. Lowe.
11. Mr. Sherlock went on to testify that horseplay was "how it was in the yard" and "by horse playing, I mean cracking jokes. That's what I mean, you know, jonesin' on each other, talk about your mama, talk about your daddy, your sister, your girlfriend." When asked if the jawing back and forth was how it was between Mr. Lowe and Mr. Gooch, Mr. Sherlock replied that that was how it was on the whole yard between all the employees every day.
12. Horseplay was a routine part of the work environment for RNS employees. Mr. Sinclair, the owner of RNS, and his supervisors were aware of the horseplay and did nothing to put a stop to it. Another assault had been reported by an employee to Mr. Sinclair and no steps were taken to prevent the same from occurring again. In fact, one of the RNS supervisors testified to observing Mr. Lowe hit Mr. Gooch on the head a couple times with a piece of paper or cardboard and never said anything about it. He also saw them tussling and wrestling near the fire barrel and never said anything until the gun was drawn. Most of the employees had been in trouble criminally and Mr. Sinclair would have a gun in his vehicle in plain view when he was on the yard paying the employees the cash he owed them for the week.
13. Mr. Lowe was shot in the abdomen as an end result of the horseplay and later died at Cape Fear Valley Hospital. A bill from Cape Fear Valley Health System for $8,475.18 and a bill from Lafayette Memorial Park in the amount of $746.34, which has already been paid, was received into evidence. A bill from Wiseman Mortuary, Inc. in the amount of $3,670.70 was also received into evidence.
14. RNS did not have workers' compensation insurance to cover the employees on December 11, 2002. Employees, who had worked at RNS for years, testified that the normal number of employees was five and that they would add some temporary help when they had larger orders that needed to be filled. Ms. Bethune testified, and the undersigned finds as fact, that she worked for RNS from July 1996 through July 2003 and there were five to seven employees most of the time. Defendant has provided no evidence such as payroll records or time cards to rebut the testimony of the employees regarding their years of employment with RNS.
15. Based on the unrefuted testimony of RNS employees, which the undersigned find credible, RNS had three or more employees and no workers' compensation insurance from at least August 1, 1996 through December 11, 2002. This amounts to 2,323 days without workers' compensation insurance. Defendant offered no evidence of any workers' compensation insurance during this period.
16. Richard Sinclair, owner of RNS, had the ability and authority to bring his company into compliance with the Act as required by N.C. Gen. Stat. § 97-93 and failed to do so.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendant R "n" S Enterprises, Inc. regularly employed three or more persons from at least August 1, 1996 through December 11, 2002. N.C. Gen. Stat. § 97-2.
2. Plaintiff was an employee of Defendant R "n" S Enterprises, Inc. on December 11, 2002. N.C. Gen. Stat. § 97-2(2).
3. On December 11, 2002, plaintiff sustained a fatal injury by accident arising out of and in the course and scope of his employment with Defendant R "n" S Enterprises, Inc. N.C. Gen. Stat. §§ 97-2(6) and 97-38.
4. Plaintiff's average weekly wage was $260.00, resulting in a compensation rate of $173.34. N.C. Gen. Stat. § 97-2(5).
5. On the date of his death, Terrance Lowe was survived by his wife, Latasha Lowe, and two children who were wholly dependent upon Terrance Lowe for support; Dontaye Ahmed Lowe and Camay Latasha Lowe. Defendant R "n" S Enterprises, Inc. is obligated to pay death benefits for 400 weeks to Latasha Lowe and the two dependent children, share and share alike, with the children's benefits to continue until they reach the age of 18. Payments shall be made to Latasha Lowe, the mother and natural guardian of the minor children. N.C. Gen. Stat. §§ 97-38, 97-39, and 97-40.
6. Defendant R "n" S Enterprises, Inc. is obligated to pay all medical expenses arising from plaintiff's injury by accident and death. N.C. Gen. Stat. § 97-25.
7. Defendant R "n" S Enterprises, Inc. is obligated to pay funeral expenses for plaintiff in an amount not to exceed $3,500.00. N.C. Gen. Stat. § 97-40.
8. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. §97-94(b).
9. Defendant R "n" S Enterprises, Inc. failed to purchase workers' compensation insurance as required by N.C. Gen. Stat. § 97-93 to cover its employees from at least August 1, 1996 through December 11, 2002 for a total of 2,323 days. Richard Sinclair, owner of defendant, had the ability and the authority to bring his business into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal to 100% of the amount of compensation due defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant R "n" S Enterprises, Inc. shall pay death benefits to Latasha Lowe and the two children, Dontaye Ahmed Lowe and Camay Latasha Lowe, share and share alike for 400 weeks, with the children's benefits to be continued until they reach the age of 18, subject to an attorney's fee set out below.
2. Defendant R "n" S Enterprises, Inc. shall pay for all medical bills arising from Terrance Lowe's injury by accident and death when the bills for same have been presented in accordance with the Workers' Compensation Act and Rules of the Industrial Commission.
3. Defendant R "n" S Enterprises, Inc. shall pay funeral expenses of up to $3,500.00 as provided by the Workers' Compensation Act when bills for same have been presented in accordance with the law and Rules of the Industrial Commission.
4. Defendant R "n" S Enterprises, Inc. shall pay plaintiff's attorney 25% of the amount due plaintiff in paragraph 1 of this award. Of the amount that has accrued, 25% shall be deducted from the amount owed to plaintiff and shall be paid directly to plaintiff's attorney. Thereafter, 25% of the weekly benefits shall be paid to plaintiff's counsel by paying every fourth check directly to plaintiff's counsel.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of $50.00 per day is assessed against Defendant R "n" S Enterprises, Inc. for failing to secure workers' compensation insurance for a total of 2,323 days from August 1, 1996 through December 11, 2002. Defendant R "n" S Enterprises, Inc. shall make a check payable to the North Carolina Industrial Commission in the amount of $116,150.00 and send directly to Carolyn Wall at the Industrial Commission.
6. Pursuant to N.C. Gen. Stat. § 97-94(d), a penalty is assessed against Defendant Richard Sinclair, individually, in the amount of $81,311.18 (400 weeks = $69,336.00 + medical bills = $8,475.18 + funeral expenses = $3,500.00). This amount shall be made by a check payable to the North Carolina Industrial Commission and sent directly to Carolyn Wall at the Industrial Commission.
7. Plaintiff's counsel shall send a copy of this Opinion and Award to all of the healthcare providers in this matter who have not been paid for services provided to Terrance Lowe related to his compensable injury. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from the Estate of Terrance Lowe. The healthcare providers shall direct their collection efforts at Richard Sinclair, whose address appears to be 505 Dashland Drive, Fayetteville, NC 28303 based on information in the Industrial Commission file. Failure to comply with this order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this Order.
8. Should the parties agree to settle this claim, defendant shall contact Assistant Attorney General Bob Hargett to resolve the penalties that have been assessed in this matter.
9. Defendant shall pay the costs.
This the __ day of January, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_________________ THOMAS J. BOLCH COMMISSIONER
 S/_________________ PAMELA T. YOUNG COMMISSIONER